IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARK GERAGHTY WONDERS,  )
                        )
        Plaintiff,      )
                        )
v.                      ) CASE NO. 1:12-CV-817-WKW
                        )
JOHN McHUGH, LISA EICHHORN,)
and HEATHER A. PEPIN,   )
                        )
        Defendants.     )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the Court are Defendants' Motion to Dismiss and Brief in Support (Docs. 16 & 17) and Plaintiff's Response in Opposition (Doc. 18).  On September 27, 2012, the District Judge referred this case to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate."  Order (Doc. 2).

Plaintiff, proceeding *pro se*, filed his Complaint on September 24, 2012, alleging violations of his civil rights.  The Complaint named as defendants:  Secretary of the Army John McHugh; Lisa Eichhorn, Plaintiff's supervisor; and Heather A. Pepin, former Fort Rucker Labor Relations Attorney and Agency Representative.  (Doc. 1)  Defendants filed a Motion to Dismiss, or in the alternative, a Motion for a More Definite Statement.  (Doc. 16).  After receiving Plaintiff's Response in Opposition, the Court held a hearing on the Motion to Dismiss on January 22, 2013.

After a review of Defendants' Motion to Dismiss (Docs. 16), Plaintiff's Opposition

(Doc. 18) and supporting briefs, and for the reasons that follow, the undersigned RECOMMENDS that Defendant's Motion to Dismiss (Doc. 16) be GRANTED in part and DENIED in part.

## I.   BACKGROUND

On August 5, 2009, prior to filing his Complaint in this Court, Plaintiff filed an EEO complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") on the basis of reprisal for prior protected Equal Employment Opportunity Commission ("EEO") activity. Compl. (Doc. 1-1) at 1.  At the time of the events giving rise to his complaint with the EEO, Plaintiff worked as a Public Specialist, GS-1035-12 at the Agency's Center of Excellence, Public Affairs Office ("Agency") at Fort Rucker, Alabama.   The Administrative Law Judge ("ALJ")[1] granted summary judgment in favor of the Agency, reasoning that Plaintiff "failed to prove that the legitimate reasons proffered by the Agency for its actions were a pretext masking unlawful retaliatory animus." *Id.* at 4.[2]

---

[1] The EEO Decision refers to an "Administrative Judge" rather than and "Administrative Law Judge."  The Court finds no difference between these terms and will therefore retain the more common usage of Administrative Law Judge ("ALJ").

[2] In reaching this decision, the ALJ relied upon certain findings of fact.  Specifically, the ALJ found that Plaintiff was counseled and reprimanded for poor job performance by his immediate supervisor from November 2008 through March 2009.  Compl. (Doc. 1-1) at 1-2.  The ALJ also found that Plaintiff filed a formal EEO complaint on March 31, 2009, alleging that he was discriminated against based on his sex when his female counterpart was promoted instead of him.  *Id.* at 2.  After the filing of this initial complaint, the ALJ found that Plaintiff was suspended for fourteen days and temporarily reassigned to the Department of Public Safety.  *Id.* at 3.

Plaintiff appealed this final order to the EEO Office of Federal Operations ("OFO"). The OFO determined that "the [ALJ] properly found that the instant complaint was suitable for summary judgment" because the record was adequately developed and there were no disputes of material fact requiring resolution through a hearing. *Id*. The OFO noted that "[s]ubstantial evidence shows that management had already started the process of taking progressive disciplinary actions against [Plaintiff] for failure to follow instructions concerning the use of leave and adherence to work schedules before he first sought EEO counseling. This fact supports the [ALJ's] determination that the disciplinary actions that occurred after management learned of [Plaintiff's] EEO counseling and his filing of a formal complaint were a continuation of the progressive discipline for [Plaintiff's] failure to correct his misconduct." *Id*. at 5. Thus, the OFO supported the ALJ's conclusion that Plaintiff failed to show that the alleged incidents were "unlawfully motivated retaliatory animus." *Id*. at 5-6. Upon receiving the OFO's decision, Plaintiff filed a timely civil action with the Court.[3]

In his Complaint, Plaintiff states that Fort Rucker Lyster Army Health Clinic ("LAHC"):

> impermissibly released Personal Health Information (PHI) regarding the Plaintiff to his supervisor, Lisa Eichhorn. Eichhorn subsequently impermissibly released this information in an investigation, where she also stated in a written memorandum that

---

[3] Plaintiff was given ninety calendar days from the date that he received the OFO's decision to file a civil action in an appropriate United States District Court. Comp. (Doc. 1-1) at 7. The OFO's decision was issued September 14, 2012. *Id*. Plaintiff filed his Complaint in this Court on September 24, 2012.

the Plaintiff was a 'master of twisting the truth.'  Eichhorn has made a series of
unsubstantiated and defamatory statements of the Plaintiff over the years, and also
violated the Privacy Act by directing the placements of two sworn statements onto a
Public Drive.  Her aggressive actions and outrageous statements against the Plaintiff
have caused substantial damage to the Plaintiff's career and reputation.

(Doc. 1) at 2.  In addition to the facts alleged against LAHC and Eichhorn, Plaintiff further

alleges that "former Fort Rucker Labor Relations Attorney and Agency Representative

Heather A. Pepin made fraudulent and defamatory statements in a sworn statement to [an]

Equal Employment Opportunity Commission Administrative Judge . . . ." *Id*. at 2.  Further,

Plaintiff states that "[a] subsequent Health and Human Services independent investigation

of the matter found that [LAHC] did, indeed, impermissibly release the Plaintiff's personal

health information." *Id*.

Plaintiff requests the following relief:

a "[f]ederal criminal investigation into the actions taken against the Plaintiff by all
aforementioned Fort Rucker officials; an ethics investigation into Attorney Pepin's
fraudulent activities against the Plaintiff with appropriate legal Bar sanctions and
penalties; $5,000,000.00 (five million dollars) in punitive damages due to pain and
suffering, defamation of character, illegal release of personal health information;
obstruction of justice; a summary judgment in the Plaintiff's favor of all original EEO
charges . . . [and] all related court costs and attorney fees."

*Id*.

## II.   STANDARD OF REVIEW

Defendants have moved the Court to dismiss the Complaint under Rule 12(b)(1) of

the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  "Federal courts

are courts of limited jurisdiction" and, as such, possess only the power to hear cases as

4

authorized by the Constitution or the laws of the United States. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). Thus, a federal court "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings" and, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

Defendants have also moved the Court to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Under [Rule 12(b)(6)], whether a plaintiff failed to state a claim upon which relief can be granted must be ascertained from the face of the complaint." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996). In considering a motion pursuant to Rule 12(b)(6), the Court must "accept the facts of the complaint as true and view them in the light most favorable to the nonmoving party." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004).

## III.   DISCUSSION

The Court begins by noting that Plaintiff's claims against Defendants are not a model

of clarity.  However, after reviewing the Complaint (Doc. 1) and Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc. 18), the Court discerns that Plaintiff is asserting, amongst others, Title VII claims.  As previously noted, Plaintiff filed an EEO complaint alleging employment discrimination in violation of Title VII.  He subsequently exhausted the administrative appeals process and was given a Right to File a Civil Action notice after the OFO affirmed the ALJ's decision.  Although Plaintiff's Complaint is devoid of any mention of "Title VII," Plaintiff specifically requests relief in the form of "a summary judgment in the Plaintiff's favor of all EEO charges, including the recission [sic] of the 14-day suspension and all other adverse documents permanently expunged from the Agency records."  (Doc. 1) at 2.  Plaintiff also attaches documentation of the EEO proceedings to his Complaint.  *See* Comp. (Doc. 1-1); (Doc. 1-21); (Doc. 1-23).  As such, the Court determines that Plaintiff is indeed alleging Title VII claims, and may proceed accordingly.

Defendants request that if the Court finds "that Plaintiff stated a Title VII claim . . . the Court should dismiss Plaintiff's claims against the individually named Defendants." Def.'s Mot. (Doc. 17) n. 4 at 8.  The Court agrees with Defendants that the only appropriate defendant in a Title VII action brought by a federal employee alleging employment discrimination is the head of the agency involved.  *Canino v. United States EEOC*, 707 F.2d 468, 472 (11th Cir. 1983).  Thus, in bringing his Title VII claims, Plaintiff may proceed only against Defendant McHugh, Secretary of the Army, while Defendants Eichhorn and Pepin are due to be dismissed.

6

Further, Defendants argue that Plaintiff fails to allege sufficient facts for plausible Title VII claims.  Def.'s Mot. (Doc. 17) at 11.  Defendants state that "[a]lthough Plaintiff attached the EEOC OFO Decision to his Complaint, he fails to allege a Title VII cause of action as well."  As previously noted, the Court recognizes that Plaintiff's Complaint is indeed void of any mention of "Title VII."  However, because Plaintiff's Complaint seeks relief in the form of "summary judgment in the Plaintiff's favor of all original EEO charges," the Court is able to determine that Plaintiff is bringing Title VII claims.  Further, in bringing Title VII claims, Plaintiff's claims are limited to the allegations of discrimination that were raised and exhausted at the administrative level.  *See, e.g., Basel v. Sec'y of Def*, 2013 WL 490783 *3 (11th Cir. 2013) ("Although judicial complaints do not necessarily have to be mirror images of earlier administrative complaints, allegations of new acts of discrimination that are offered as the essential basis for judicial review must nonetheless be presented to the agency.").  This Court then reviews those exhausted claims *de novo*.  *Ellis v. England*, 432 F.3d 1321, 1324 (11th Cir. 2005) ("[A] federal employee unhappy with the administrative decision may bring a claim in the federal district court and obtain [ ] *de novo* review . . . .").  As the Court is limited to review of the allegations brought before the EEOC, and Plaintiff's Complaint attaches the EEO Decision addressing those allegations, the Court finds that Defendants do not require a more definite statement.

In addition to the Title VII claims, it appears that Plaintiff is asserting additional, separate claims outside of Title VII.  These claims include violations of the Privacy Act and

the Health Insurance Portability and Accountability Act ("HIPAA"), along with state law claims of defamation, harassment, and aggressive behavior. *See* Pl.'s Opp'n (Doc. 18) at 2-5. Finally, Plaintiff appears to allege ethics violations against a former Fort Rucker Labor Relations Attorney who appeared in his prior EEO hearing. *Id*. at 5-6. To the extent Plaintiff is alleging these claims outside of Title VII, the claims are due to be dismissed for the following reasons.

The Court turns first to Plaintiff's defamation claims. Defendants argue that "these claims are preempted by the Civil Service Reform Act ("CSRA"), which is the exclusive remedy for employment related claims." (Doc. 17) at 2. The Court agrees that these state law claims are indeed preempted by the CSRA.

The CSRA is a network of statutory provisions that dictates most of the rights and obligations, working conditions, benefits, and remedies for the federal civilian workforce. In enacting the CSRA, 5 U.S.C. § 1101 *et seq.*, Congress created a comprehensive scheme for evaluating prohibited *personnel actions* taken against federal employees. *United States v. Fausto*, 484 U.S. 439, 455 (1988). A personnel action is defined within the CSRA as, amongst others, a "disciplinary or corrective action," a "performance evaluation," or "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(A). Covered entities commit a prohibited personnel practice by taking a personnel action motivated by one of twelve specified prohibited grounds, including discrimination on the basis of race, color, religion, national origin, age, handicapping condition, marital status

or political affiliation; nepotism; reprisal for whistleblowing; and other non-meritorious

factors.  5 U.S.C. § 2302 (b) (1)-(12) (2000).  Allowing federal court jurisdiction over

prohibited personnel actions would clearly "impede the ideals of fast, efficient management

and greater uniformity in the judicial review process." *Tucker v. Def. Mapping Agency*, 607

F. Supp. 1232, 1240 n.6 (D.R.I. 1985).  Therefore, courts examining the CSRA's preemptive

nature have concluded "beyond dispute that Congress intended [the CSRA] to provide an

exclusive procedure for challenging federal personnel decisions." *Berrios v. Dep't of Army*,

884 F.2d 28, 30 (1st Cir. 1989); *see also Howard v. Parisian, Inc.*, 807 F.2d 1560, 1565 (11th

Cir. 1987) ("Preemption is required if the assertion of a state law claim would contravene the

structure and purpose of a federal statute.").  Because of this intent to preclude, "[t]here is

no longer any serious dispute that the CSRA preempts challenges to *personnel actions*

brought under federal law." *Berrios*, 884 F.2d at 30 (emphasis added).  Further, courts,[4]

---

[4] *See Bush v. Lucas*, 462 U.S. 367, 385-88 (1983) (holding that because the federal employee's claims arose out of an employment relationship governed by the CSRA, it would be inappropriate for the court to supplement that regulatory scheme with a new nonstatutory damages remedy); *Steele v. United States.*, 19 F.3d 531, 532-33 (10th Cir. 1994) (former federal employee's state law tort claims against former federal employer arising from employee's discharge were clearly prohibited by the CSRA's comprehensive scheme for addressing prohibited personnel practices); *Roth v. United States*, 952 F.2d 611, 614-16 (1st Cir. 1991) (former federal employee's defamation claim against supervisor for statements concerning job performance were preempted by the CSRA); *Rollins v. Marsh*, 937 F.2d 134, 140 (5th Cir. 1991) (defamation claim against federal employer was preempted by the CSRA because the actions taken against the employee constituted "personnel decisions"); *Saul v. United States*, 928 F.2d 829, 835-39 (9th Cir. 1991) (federal employee's state tort claims of defamation, infliction of emotional distress, and invasion of privacy against his supervisors were precluded by the CSRA); *David v. United States*, 820 F.2d 1038, 1043 (9th Cir. 1987) (holding that the CSRA provided the exclusive remedy for a former federal employee's state intentional infliction of mental harm claim arising from her status as a union steward).

including the United States Court of Appeals for the Eleventh Circuit, have held that claims based on acts that are closely intertwined with personnel actions, such as state law defamation claims, are precluded. *See Burl v. Principi*, 181 F. App'x 760 (11th Cir. 2006) (state-law employment-related tort claims brought by federal employee against supervisor are preempted by CSRA); *Broughton v. Courtney*, 861 F.2d 639, 644 (11th Cir. 1988) (determining that the state law claims of conspiracy and intentional interference with employment were preempted by the CSRA because they were considered personnel actions within the scope of the CSRA).   Thus, once a court concludes that a plaintiff's claim constitutes a challenge to an adverse personnel action within the meaning of the CSRA, or that the claim is closely intertwined with a plaintiff's employment, the claim is preempted.

Plaintiff's defamation claim is preempted by the CSRA because the claim is based upon acts closely intertwined with his employment.   Plaintiff asserts that Defendant Eichhorn "has made a series of unsubstantiated and defamatory statements of the Plaintiff over the years"[5] including a written statement that "the Plaintiff was a 'master of twisting the truth.'" Compl. (Doc. 1) at 2.   These alleged statements extend from the supervisor-employee

---

[5] In his Opposition to Defendants' Motion to Dismiss, Plaintiff lists multiple grievances against Defendant Eichhorn that the Court construes to be Plaintiff's attempt to set forth this "series of unsubstantiated and defamatory statements" made by Defendant Eichhorn.   Amongst his allegations, Plaintiff states that Defendant Eichhorn "signed a sworn statement stating in part that the Plaintiff 'creates a lot of disruption in the workplace,' and 'has the ability to "go postal" at any time.'" (Doc. 18) at 4.   Further, Plaintiff states that Defendant Eichhorn referred to him as a "spoiled child" and wrote an email stating that Plaintiff "is not getting his work done." *Id*.   The Court notes that all of the alleged defamatory remarks asserted by Plaintiff relate to the work relationship that he held with Defendant Eichhorn.

relationship and relate to performance reviews, disciplinary actions, and changes in the duties, responsibilities, and working conditions of Plaintiff.  As such, Plaintiff's defamation claim is closely intertwined to adverse personnel action within the meaning of the CSRA. Thus, Plaintiff's defamation claim is preempted by the CSRA.

Similarly, Plaintiff's allegations of Privacy Act violations are preempted by the CSRA and should be dismissed.  Typically, Privacy Act suits challenge errors in the accuracy of information maintained in governmental records or the improper disclosure of such information. *See* 5 U.S.C. §§ 552a (b), (g) (2000).  A civil cause of action for damages under the Privacy Act arises when a federal agency fails to maintain accurate records concerning an individual, and *consequently*, the agency acts adversely to that individual.  *Id*. at § 552a (g) (1) (C).  Courts reviewing a Privacy Act claim within the preemptive context of the CSRA must first determine whether a plaintiff is attempting to obtain judicial review of a personnel action by casting it as a Privacy Act claim.  *See, e.g., Kleiman v. Dep't of Energy*, 956 F.2d 335, 335-38 (D.C. Cir. 1992) (employee claiming that his personnel file inaccurately reflected his job title not properly brought under Privacy Act where records accurately reflected position; complaint was, in fact, collateral attack on his position classification, for which CSRA provides exclusive remedies).  If so, Plaintiff cannot circumvent the administrative remedies provided by the CSRA and the claim must be dismissed as preempted by the CSRA.  *See Elgin v. Dep't of Treasury*, 132 S.Ct. 2126, 2140 (2012) (a federal employee may not resort to other statutes to effectively challenge, review,

reverse, or otherwise collaterally attack a decision falling within the scope of the CSRA); *Pellerin v. Veterans Admin.*, 790 F.2d 1553, 1555 (11th Cir. 1986) (rejecting attempt to use the Privacy Act as a "skeleton key" to reopen unfavorable federal agency decision).  On the other hand, the Privacy Act permits a federal employee to recover damages for an adverse personnel action *actually caused* by an inaccurate or incomplete record.  *See Hubbard v. EPA*, 809 F.2d 1, 5 (D.C. Cir. 1986) (district courts retain jurisdiction to award damages "for an adverse personnel action actually caused by an inaccurate or incomplete record") (emphasis in original).

Here, Plaintiff claims that Defendant Eichhorn "violated the Privacy Act by directing the placements of two[6] sworn statements onto a Public Drive."  Compl. (Doc. 1) at 2.  In combination with other allegedly defamatory statements made by Defendant Eichhorn, Plaintiff alleges that the statements "have caused substantial damage to the Plaintiff's career and reputation."  *Id*.  Plaintiff attaches these sworn statements along with his Complaint.  In summary, the May 2009 statement alleges that Plaintiff is "disruptive" and "hostile," and that he may pose a safety concern for the office.  Compl. (Doc. 1-8).  The September 2009 statement reports that new inventory policies were implemented in Defendant Eichhorn's office after a television and digital camera went missing.  Compl. (Doc. 1-14).  In the statement, Defendant Eichhorn states that the new policy will require two people to conduct

---

[6] In Plaintiff's Opposition to Dismiss, Plaintiff states that three sworn statements were placed on the drive.  However, considering that the Complaint only alleges that two sworn statements were placed on the drive and Plaintiff attached only two statements, the Court assumes that Plaintiff mistakenly asserted that three statements were placed on the drive.

inventories.  Defendant Eichhorn goes on to state that "Mr. Wonders always wanted to do

them himself."  *Id*.  Construing these pleadings most favorably to Plaintiff, it appears that

Plaintiff is attempting to assert that these statements somehow caused damage to his career.

However, at bottom, Plaintiff's inferred assertion that Defendants retaliated against

him after Defendant Eichhorn placed these inaccurate statements on the Public Drive is no

more than a challenge to a prohibited personnel action as defined by the Privacy Act.  First,

the conduct that Plaintiff alleges falls within a number of the CSRA's definitions of

"personnel action": (1) "a disciplinary or corrective action," (2) a "detail, transfer, or

reassignment," (3) "a decision concerning pay, benefits, or awards, or concerning . . . training

if the . . . training may reasonably be expected to lead to [a] promotion," and (4) any other

significant change in duties, responsibilities, or working conditions."   5 U.S.C. §

2302(a)(2)(A).  Given this broad language, the Court concludes that Plaintiff's Privacy Act

claims complain about "personnel actions" within the meaning of the CSRA.  *See Orsay v.*

*United States Dep't of Justice*, 289 F.3d 1125, 1129 (9th Cir. 2002) (holding that opening a

disciplinary file on employees containing false information that resulted in the employees

involuntary leave of absence and assignment to less desirable positions lacking promotional

opportunities was within the statutory term "personnel action" of the CSRA).

Second, these personnel actions were taken for reasons that the CSRA prohibits.

Although Plaintiff never directly alleges why Defendant placed these sworn statements on

the Public Drive, it is implicit in Plaintiff's Complaint that the actions were unjustified.  As

such, the actions would fall under the CSRA's general prohibition against prejudicial treatment based on "conduct which does not adversely affect the performance of the employee . . or the performance of others."  5 U.S.C. § 2302 (b) (10).  Therefore, to the extent that Plaintiff is alleging a separate Privacy Act violation outside of his Title VII claims, Plaintiff's claim is preempted by the CSRA.

The Court turns next to Plaintiff's claims of HIPAA violations.  To the extent Plaintiff is making these claims separate from his Title VII claims, the Court lacks jurisdiction to hear those claims.  It is well-settled that "[p]rivate rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  HIPAA clearly does not contain an express provision creating a private right of action.  *Sneed v. Pan Am. Hosp.,* 370 F. App'x 47, 50 (11th Cir. 2010); *see also* 65 Fed. Reg. 82601 (Dec. 28, 2000) ("Under HIPAA, individuals do not have a right to court action.").  Further, this and other courts have declined to hold that HIPAA creates an implied private right of action.  *See, e.g., Sneed*, 370 F. App'x at 50; *Univ. of Colo. Hosp. v. Denver Pub. Co.*, 340 F. Supp. 2d 1142 (D. Colo. 2004);  *Walker v. Gerald*, 2006 WL 1997635 (E.D. La. June 27, 2006); *Poli v. Mountain Valleys Health Ctrs., Inc.*, 2006 WL 83378 (E.D. Cal. Jan. 11, 2006); *Cassidy v. Nicolo*, 2005 WL 3334523 (W.D.N.Y. Dec. 7, 2005); *Johnson v. Quander*, 370 F. Supp. 2d 79 (D.D.C. 2005); *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F. Supp. 2d 1176 (D. Wyo. 2001); *Means v. Ind. Life & Accident Ins. Co.*, 963 F. Supp. 1131 (M.D. Ala. 1997); *Wright v. Combined Ins. Co. of Am.*, 959 F. Supp. 356 (N.D. Miss. 1997).

Therefore, without an express or implied private right of action, the Court determines that there is no federal subject matter jurisdiction over Plaintiff's HIPAA claims, and they must be dismissed.

Finally, Plaintiff appears to assert a claim of ethics violations against Defendant Heather A. Pepin, a former attorney for Fort Rucker Labor Relations who represented the Agency in Plaintiff's EEO complaint. Plaintiff does not cite to a federal statute or allege a constitutional right under which Plaintiff may bring his claim against a former, opposing federal attorney in a prior EEO proceeding to federal court. As such, the Complaint falls short of the jurisdictional statement requirements of Rule 8 of the Federal Rules of Civil Procedure. Moreover, the Court is unable to imagine a way in which it could hold subject matter jurisdiction over Plaintiff's alleged ethics violations regarding opposing counsel.

In summary, to the extent Plaintiff is alleging a state law defamation claim, HIPAA and Privacy Act violations, and attorney ethics violations, those claims are due to be dismissed. However, because Plaintiff has been given a Right to File a Civil Action notice from the EEO, the Court determines that Plaintiff may proceed with his Title VII claims within the parameters set forth above.

## IV.   CONCLUSION

For the reasons stated above, the RECOMMENDATION of the Magistrate Judge is that the Motion to Dismiss (Doc. 16) be GRANTED in part and DENIED in part as follows:

(1) that Plaintiff's claims pursuant to Title VII of the Civil Rights Act of 1964 be

DISMISSED as to all Defendants except Defendant McHugh;

(2) that Plaintiff's claims of defamation, Privacy Act violations, HIPAA violations, and other various claims be DISMISSED as to all Defendants;

(3) that Defendants' Motion for a More Definite Statement be DENIED; and

(4) that this matter be referred back to the undersigned Magistrate Judge for further appropriate proceedings.

It is further

ORDERED that on or before **April 18, 2013**, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Sec., Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981).

Done this 4th day of April, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE