IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARK GERAGHTY WONDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:12-cv-817-WKW-WC |
| | ) | |
| JOHN McHUGH, | ) | |
| Secretary of the Army, | ) | |
| | ) | |
| Defendant. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.    INTRODUCTION

Mark Geraghty Wonders ("Plaintiff") filed a Complaint against John McHugh, Secretary of the Army, Lisa Eichorn, and Heather A. Pepin, alleging retaliation in violation of Title VII, defamation, Privacy Act violations, HIPAA violations, and other various claims.  Compl. (Doc. 1).  Jurisdiction is proper under 28 U.S.C. § 1331 (federal question).  The District Judge entered an Order (Doc. 2) referring this matter to the undersigned Magistrate Judge "for action or recommendation on all pretrial matters."

Defendant previously filed a Motion to Dismiss, or in the Alternative, a Motion for More Definite Statement.  (Doc. 16).  The District Judge entered an Order adopting the undersigned's Recommendation that (1) the Motion to Dismiss be granted as to the Title VII claims against individual defendants Eichorn and Pepin and granted as to the claims of defamation, Privacy Act violations, HIPAA violations, and other various claims

against all defendants; and (2) the Motion for a More Definite Statement be denied.  *See* Order (Doc. 28).  Thus, Plaintiff's only surviving claim is the Title VII retaliation claim against Defendant John McHugh ("Defendant") based on the allegations raised and exhausted at the administrative level.

Before the court is Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 53) and Memorandum of Law in Support (Doc. 54).  Plaintiff filed a Response (Doc. 59), and Defendant filed a Reply (Doc. 61).  Upon consideration of the Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 53), the pleadings of the parties, and the evidentiary materials filed in support thereof, and for the reasons that follow, the court finds that the Motion is due to be granted as to the request for summary judgment and denied as to the request for dismissal.

## II.     STANDARD OF REVIEW

### A.      *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction" and, as such, possess only the power to hear cases as authorized by the Constitution or the laws of the United States. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case."  *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).  Thus, a federal court "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings" and, "once a federal court determines that it is without subject matter jurisdiction, the court is

powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

"When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir.2003) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)). However, "the district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action*.'" *Id.* (quoting *Garcia v. Copenhaver, Bell & Assoc.*, 104 F.3d 1256, 1261 (11th Cir.1997)) (emphasis in original). "[J]urisdiction becomes intertwined with the merits of a cause of action when 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *Id.* at 926 (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 139-40 (9th Cir.1983)). If the merits of the cause of action are implicated, "the proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison*, 323 F.3d at 925 (quoting *Garcia v. Copenhaver, Bell & Assoc.*, 104 F.3d 1256, 1261 (11th Cir.1997)) (ellipses omitted).

### B.     Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(a).[1]  Only disputes about material facts will preclude the granting of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion.  *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986).  However, once the movant has satisfied this burden, the nonmovant is then similarly required to cite portions of the record which show the existence of a material factual dispute.  *Id.* at 324.  In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions,

---

[1] On December 1, 2010, amendments to Rule 56 became effective.  The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*"  *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original).  Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.  Accordingly, while the Court is bound to apply the new

interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## III.    STATEMENT OF FACTS

The court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, the Motion for Summary Judgment. The

---

version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:[2]

Plaintiff is a former Public Affairs Specialist, GS-1035-12, at the Army's Center of Excellence Public Affairs Office ("PAO") at Fort Rucker, Alabama.  Plaintiff began his employment with the PAO on February 5, 2008.  While employed with the PAO, Plaintiff was a member of the local union, the American Federation of Government Employees, Local 1815.  At all times relevant to this action, Lisa Eichorn ("Ms. Eichorn") was Plaintiff's first-line supervisor and George Steuber ("Mr. Steuber"), Deputy Garrison Commander, was his second-line Supervisor.  Colonel Yvette Kelley ("COL Kelley") was the Garrison Commander.  Defendant serves as the Secretary of the Army.

In November 2008, Plaintiff requested Mr. Steuber to reclassify Plaintiff's position to a higher pay grade because of Plaintiff's assigned duties.  Mr. Steuber denied that request, explaining that Mr. Steuber did not have the authority to reclassify the position.

---

[2]  There is no section of disputed facts in either party's briefs.  Defendant's brief included a section of "undisputed facts," and Plaintiff filed his own "undisputed facts" document as an attached exhibit to his Response.  Each party denied various items from the other's recitation of the facts.  Where one party put forth relevant assertions of fact that were not addressed by the other party, the court considered those facts as undisputed for the purposes of this motion.  Fed. R. Civ. P. 56(e)(2).  The court has also relied on facts developed during the administrative proceedings.  *See Frazier v. Widnall*, 1:94-cv-988JMF, 1995 WL 807169 (N.D. Ga. Dec. 8, 1995) ("While Rule 56 does not explicitly provide that reliance on judicial or administrative records is permissible, copies of such evidence, when certified to be true and correct by the custodian of the records, may support a grant or a denial of a summary judgment motion.") (citing *Int'l Distrib. Corp. v. American Dist.*, 569 F.2d 136, 138 (D.C. Cir. 1977); *Langston v. Johnson*, 478 F.2d 915, 917-18 (D.C. Cir. 1973)).

On November 19, 2008, Plaintiff emailed Ms. Eichorn, who was on leave preparing for surgery.  Plaintiff advised Ms. Eichorn that she needed to select someone else to be responsible for the PAO property book and PAO credit card, tasks previously assigned to Plaintiff, because he was planning to pursue overseas duty opportunities. When Ms. Eichorn returned to work in December 2008 after two weeks leave, Plaintiff came to Ms. Eichorn's office to announce that he cut up the PAO government purchase card and showed Ms. Eichorn the destroyed card.  Plaintiff stated that he would no longer be performing that additional duty because he didn't want to, although Plaintiff later explained to Ms. Eichorn that it was against regulations for the PAO purchase card task to be assigned to Plaintiff.  During this encounter, Plaintiff also told Ms. Eichorn that he would no longer work on any task that he felt was beneath a GS-12 pay level.

On December 14, 2008, Plaintiff sent Mr. Steuber an email complaining that Ms. Eichorn removed solid objective achievements from an evaluation of Plaintiff.  Ms. Eichorn agreed to review the items Plaintiff felt were omitted, and upon agreement between Plaintiff and Ms. Eichorn, Ms. Eichorn could modify the evaluation.  On December 22, 2008, Plaintiff again entered Ms. Eichorn's office and explained that Ms. Eichorn cannot make Plaintiff do any tasks that he doesn't want to do and that he would not be completing work that was below a his pay grade.

In early January, Plaintiff left the office without permission on multiple occasions. On January 6, 2009, Ms. Eichorn sent Plaintiff an email reiterating that Plaintiff must let her, or someone else in the office if she is not in, know if he is leaving the office to ensure the front door of the PAO is covered.

On January 22, 2009, Ms. Eichorn called Plaintiff into her office to discuss the progress on Plaintiff's projects.  During the meeting, Ms. Eichorn found Plaintiff to be extremely negative.  Plaintiff expressed that he found it unfair that he had additional duties in the office and told Ms. Eichorn that he expected her to reassign the additional duties.  During this meeting, Ms. Eichorn also scolded Plaintiff for not having returned phone calls relating to one of his projects.  The same day, Ms. Eichorn documented Plaintiff entering a coworker's unattended office without permission.  Ms. Eichorn told Plaintiff that was unacceptable conduct, and Plaintiff responded that Ms. Eichorn should take over being the key control officer if she didn't want Plaintiff accessing others' offices.

On February 26, 2009, while at work, Plaintiff made a personal phone call for over an hour, which was overheard by the staff in the PAO.  One staff member complained to Ms. Eichorn that Plaintiff was too loud and used foul language while on the call.  Later that day, Plaintiff emailed Ms. Eichorn stating that he would be leaving the PAO to go to the union office.  Ms. Eichorn responded within minutes that Plaintiff could not leave at that time because he was the only employee in the office and the office could not be left unattended.  Plaintiff left the PAO and went to the union office anyway.  Ms. Eichorn issued a Letter of Reprimand for insubordination on March 10, 2009.

On February 27, 2009, Plaintiff filed a complaint with the EEOC against Ms. Eichorn alleging harassment.[3]  Between March 2 and 6, 2009, Mr. Steuber learned of the

---

[3] This complaint was withdrawn on August 19, 2009.

EEOC complaint when he received notification that he was a responding government official.  However, Ms. Eichorn did not learn of the EEOC complaint on or around March 20, 2009.[4]  COL Kelley did not learn of the EEOC complaint until an April 27, 2009 taped phone call between Plaintiff, COL Kelley, and the union.

On March 13, 2009, Ms. Eichorn conducted an interim review of Plaintiff's performance.  During the meeting, Ms. Eichorn discussed specific deficiencies in Plaintiff's performance.  Ms. Eichorn stated that Plaintiff's performance was substandard and had degraded since the end of November 2008.  Specifically, Ms. Eichorn explained to Plaintiff that his failure to communicate with Ms. Eichorn was unacceptable and that Plaintiff must keep Ms. Eichorn informed on the progress of his projects.  Ms. Eichorn also told Plaintiff that he was not being a team player and she found Plaintiff to be a "smart ass" in his dealings with her.  (Doc. 53-4) at 3.  During the meeting, Ms. Eichorn found Plaintiff to be abrupt and rude, refusing to allow Ms. Eichorn to discuss any one matter in full before interrupting her.  Ms. Eichorn also told Plaintiff that she had two statements from coworkers speaking out against Plaintiff.  Plaintiff later requested a copy

---

[4] Plaintiff asserts that he sent Ms. Eichorn an email on March 20, 2009, requesting leave to meet with his EEOC counselor.  Ms. Eichorn states that she was informed of the EEOC complaint on March 25, 2009.  While Plaintiff also argues that Ms. Eichorn knew about the EEOC complaint as of March 4, 2009, when Employee Program Manager Ronald Sorrells claims he spoke with Ms. Eichorn about the matter, the court does not find this assertion to be supported by the evidence because the email Plaintiff relies upon for this assertion says nothing about the EEOC and only discusses Plaintiff's position with the PAO.  Additionally, Plaintiff invites the court to "assume" that Ms. Eichorn knew about the EEOC complaint as of the first week of March because that is when Mr. Steuber learned of it and Mr. Steuber often spoke with Ms. Eichorn about the employees in the PAO.  The court notes that it is improper to "assume" facts at the summary judgment stage of litigation.  Because Plaintiff presented no evidence to the contrary, the court finds Ms. Eichorn learned of the EEOC complaint on or around March 20, 2009.  *See* Rule 56(e)(2).  The court also notes that the exact date Ms. Eichorn learned of the EEOC complaint is not a material fact because it is clear from the evidence that Plaintiff began receiving disciplinary actions prior to the earliest date on which Plaintiff attempts to assert Ms. Eichorn could have known.

of the statements, but Ms. Eichorn denied the request, explaining to Plaintiff that "any statements [Ms. Eichorn] ha[d] were given to [her] in confidence and there [wa]s no particularized need for this information to be released to [Plaintiff]." *Id.* at 2. That same day as the interim review, Plaintiff emailed Ms. Eichorn again requesting to be relieved of the property book duties. A few days later, Ms. Eichorn emailed Plaintiff to clarify that the March 13, 2009 review was not a midterm review, but rather an interim review and an opportunity to improve performance.

On March 18, 2009, Ms. Eichorn again documented two instances of Plaintiff leaving the PAO without alerting Ms. Eichorn. On or around March 30, 2009, Ms. Eichorn attempted to issue Plaintiff an Official Counseling memo, again addressing Plaintiff's performance deficiencies. Specifically, Ms. Eichorn discussed Plaintiff's continued failure to communicate and disregard of instructions. Ms. Eichorn listed five tasks that Plaintiff failed to complete despite Ms. Eichorn's instruction to Plaintiff that he must complete those tasks. Ms. Eichorn asked Plaintiff to come into her office to receive the performance counseling. Plaintiff entered Ms. Eichorn's office but refused to discuss his behavior with Ms. Eichorn and refused to sign any documents, stating that he wanted a union representative to be present. Ms. Eichorn explained that Plaintiff did not have a right to a union representative because performance counseling is not disciplinary, but rather an informal opportunity to discuss problems. Plaintiff still declined. Ms. Eichorn had a witness to the incident sign a counseling statement and to note that Plaintiff refused to sign the document.

On April 10, 2009, Ms. Eichorn denied Plaintiff's sick leave requests because Plaintiff repeatedly failed to follow the proper procedure.  On April 13, 2009, Ms. Eichorn issued a Leave Disapproval/Leave Restriction Notice stating that Plaintiff had repeatedly demonstrated a pattern of complete disregard for authority and established a pattern of abusing sick leave for back related problems without acceptable medical documentation to support Plaintiff's leave request.

On April 13, 2009, Plaintiff was working on his EEOC paperwork while the rest of the PAO was preparing for a big event.  Ms. Eichorn told Plaintiff to stop working on the EEOC paperwork and get back to work.  He ignored Ms. Eichorn's request.  Again the next day, Ms. Eichorn found Plaintiff working on his EEOC paperwork.  Ms. Eichorn again asked Plaintiff to stop filing out his paperwork during work hours, this time in writing via email.

On April 15, 2009, Ms. Eichorn proposed Plaintiff be suspended for fourteen calendar days for insubordination and failure to observe orders, rules, or procedures.  Ms. Eichorn attempted to meet with Plaintiff to read the proposed suspension to him, but Plaintiff refused, telling Ms. Eichorn that she did not have authority to order Plaintiff to do anything.  On May 13, 2009, after considering Plaintiff's written response, Mr. Steuber sustained the charges and determined that a fourteen day suspension was the minimum punishment necessary to promote the efficiency of the service.  The notice stated that Plaintiff was suspended for insubordination and failure to follow supervisory instructions concerning a series of events where Plaintiff continued to come to the workplace outside of his duty hours without permission despite instructions to the

11

contrary.  This fourteen day suspension was served from May 18, 2009 through May 29, 2009.

On April 16, 2009, Ms. Nancy Rasmussen, Command Information Officer, stated "[f]or the past six months, the level of hostility and disruptive behavior caused by [Plaintiff] has escalated to a point where I am frequently sick to my stomach in fear of what might happen next."  (Doc. 53-12) at 8.  Ms. Rasmussen had also complained to management that Plaintiff was "conspicuously absent when his presence [wa]s required to execute missions, which leaves his teammates to fill in," and failed to save his work files to the PAO shared drive so other PAO employees could access necessary information in Plaintiff's absence.  *Id.* at 4.  The same day Ms. Sheryl Lowell, Community Relations Chief, noted "the uncomfortable and unprofessional atmosphere created by [Plaintiff] when [Ms. Lowell] assumed [her] duties as the Community Relations Chief."  *Id.* at 7.

On April 22, 2009, Ms. Eichorn sent Plaintiff an Absence Without Leave (AWOL) letter stating that Plaintiff had been AWOL since April 16, 2009, because Plaintiff failed to report to work or seek approved leave requests.  On April 23, 2009, Plaintiff requested the assistance of Lyster Army Health Clinic ("LAHC") in obtaining Family and Medical Leave Act and/or convalescent sick leave.  At Plaintiff's request, Ms. Maleika Lewis, an LAHC staff member, left a message for Ms. Eichorn to return her call.  During the ensuing conversation, Ms. Eichorn asked whether Ms. Lewis could tell her whether Plaintiff had a serious medical condition that prevented him from working.  Ms. Lewis

responded in the negative and said that Plaintiff was placed on convalescent sick leave because he reported being stressed at work.

On April 30, 2009, COL Kelley ordered an AR15-6 investigation into alleged hostility within the PAO.  Specifically, COL Kelley requested investigation into whether employees feel threatened, harassed, or intimidated in the workplace and whether there is any present threat of harassment, intimidation, or other disruptive behavior by employees. On the same day, COL Kelley notified Plaintiff that she was placing Plaintiff on a thirty-day detail with a different office during the pendency of the investigation.  The next day, the union requested that Plaintiff be permanently moved from the PAO.  COL Kelley denied the request and instructed Plaintiff would remain in the temporary detail until the Commander's inquiry was complete, but COL Kelley later extended the temporary detail to sixty days because the investigation was not complete.  The temporary detail ended on June 14, 2009.

The AR15-6 investigating officer, Officer Alfred Townsend, determined that Plaintiff's behavior demonstrated hostility in the workplace and did not find hostility caused by any other PAO employee.  Officer Townsend recommended that Plaintiff be moved to another assignment.  The recommendation was not followed because it was separately determined that Plaintiff would be terminated from federal service.[5]

On August 5, 2009, Plaintiff filed a formal complaint of discrimination alleging Defendant retaliated against Plaintiff between March and June 2009 because of prior

---

[5] The termination is not an action challenged in this case.

EEOC activity (Plaintiff's February 27, 2009 complaint).   Specifically, Plaintiff complained that (1) his supervisor made negative statements about his behavior and work performance during a the interim-term review on March 13, 2009; (2) Plaintiff received negative counseling by Ms. Eichorn on March 31, 2009; (3) Plaintiff's April 9, 2009 leave request was denied; (4) Plaintiff was placed on restrictive leave on April 13, 2009; (5) Plaintiff was not permitted to have a union representative present when Plaintiff was issued the Notice of Proposed Suspension on April 15, 2009; (6) Plaintiff's supervisor requested information about his medical condition on April 23, 2009; (7) the Garrison Commander launched an Army Regulation (AR) 15-6 investigation against Plaintiff on April 27, 2009; (8) Plaintiff received a Memorandum of Decision on May 13, 2009 suspending him for fourteen days; (9) the Garrison Commander extended Plaintiff's detail for sixty additional days during the investigation but denied Plaintiff's request for permanent reassignment June 1, 2009; and (10) Army leadership was aware of his supervisor requesting his medical information and failed to take corrective action.   On September 14, 2012, the EEOC Office of Federal Operations issued a decision affirming the Final Agency Decision that Plaintiff failed to show that Defendant's actions were motivated by retaliation.

## IV.   DISCUSSION

### A.   *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Defendant moves to dismiss for lack of subject matter jurisdiction because Plaintiff "made an election to pursue his claims through the union grievance procedure" and "[t]he Civil Service Reform Act ('CSRA') expressly states that an 'aggrieved

employee' with discrimination claims 'may raise the matter under statutory procedure or the negotiated [grievance] procedure, but not both.'"  Def.'s Br. (Doc. 54) at 13-14 (citing 5 U.S.C. § 7121(d)).  Plaintiff's response appears to be twofold.  First, Plaintiff argues that "[t]his [court] has already established its jurisdiction in this de novo review." Pl.'s Br. (Doc. 59) at 2.  Of course, a challenge to subject matter jurisdiction can be raised at any time. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").   Second, Plaintiff argues that his union grievance was a challenge to Plaintiff's unlawful termination, which Plaintiff states is a separate issue because the Title VII retaliation claim brought here is not based on Plaintiff's termination.  Pl.'s Br. (Doc. 59) at 3.  In fact, Defendant included as an exhibit the arbitration opinion from Plaintiff's grievance, and the document clearly lists that the proceeding was for the review of Plaintiff's termination.  (Doc. 53-30) at 2. In the Reply, Defendant failed to address this claim made by Plaintiff.  As this is a Title VII case, the court would normally retain jurisdiction.  Defendant has failed to show that this retaliation claim has been brought under the union grievance procedure.  Therefore, this court retains jurisdiction over this claim, and the motion to dismiss is due to be denied.

### B.    Motion for Summary Judgment on Title VII Retaliation Claims

Plaintiff claim alleges that Defendant retaliated against Plaintiff after Plaintiff filed a complaint with the EEOC in violation of Title VII.  Retaliation claims require a *prima facie* showing of discriminatory intent, *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1286 (11th Cir. 2000), which "can be established three ways: 1) direct evidence; 2)

15

circumstantial evidence; or 3) statistical proof." *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).  Plaintiff has not provided direct evidence that retaliation was the reason for any alleged adverse employment action nor has he proffered statistical evidence or evidence of a pattern of discrimination in this case.  Because Plaintiff's retaliation claim relies on circumstantial evidence, the claim is analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

### 1.    Establishing a *Prima Facie* Case

Under the *McDonnell Douglas* framework, Plaintiff must first create a presumption of discrimination by establishing a *prima facie* case.  *Id.*  "[T]he plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally."  *McCalister v. Hillsborough Cnty. Sheriff*, 211 F. App'x 883, 884-85 (11th Cir. 2006).  "To establish a *prima facie* case of retaliation, a plaintiff may show that he engaged in protected activity, he suffered a materially adverse action, and a causal connection existed between the activity and the adverse action."  *Underwood v. Dep't of Fin. Servs. State of Fla.*, 518 F. App'x 637, 641 (11th Cir. 2013) (unpublished) (citing *Dixon v. The Hallmark Co.*, 627 F.3d 849, 856 (11th Cir. 2010)).

An adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 68 (2006)).  Plaintiff was subject to at least one adverse employment action when Plaintiff was suspended from work for fourteen days, as a suspension certainly might dissuade a reasonable worker from making an EEOC complaint.  In fact, Defendant does not dispute that Plaintiff's suspension was an adverse action.[6]  Thus, Plaintiff has met his burden as to the adverse employment action element of the *prima facie* case.

Defendant does dispute that Plaintiff was engaged in protected activity and that there was any causal connection between any protected activity and the adverse action. First, Defendant argues that Plaintiff was not engaged in "prior" protected activity because Plaintiff's continued discipline, what Plaintiff refers to as "harassment," began in December 2008, prior to the February 27, 2009, filing date of Plaintiff's first EEOC complaint.  Def.'s Br. (Doc. 54) at 17.  However, the filing of an EEOC complaint is protected activity for the purposes of Title VII.  *Satchel v. School Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 628 (11th Cir. 2007).  Defendant points to no case law to the contrary.  That Plaintiff's protected activity wasn't prior to the beginning of the progressive discipline of Plaintiff is better addressed under the discussion of whether Plaintiff can prove a causal connection between his EEOC complaint and adverse employment actions. The court finds that Plaintiff has, therefore, met the protected activity element of the *prima facie* case.

---

[6] In Defendant's memorandum in support of summary judgment, Defendant did challenge this element; however, Defendant's argument was based on the misinformation that Plaintiff had never served the suspension.  Plaintiff corrected Defendant in his Response.  In the Reply, Defendant conceded the misstatement and did not challenge this element further, arguing only the lack of protected activity and causal connection.

Second, Defendant states that Plaintiff cannot meet the causal connection element of a *prima facie* case of retaliation because "Plaintiff cannot show that his resort to the EEOC process was the 'but for' reason of any of the alleged acts of retaliation." Def.'s Br. (Doc. 54) at 19.  In the past, the Eleventh Circuit has construed "the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the adverse action are not completely unrelated." *Perry v. Alabama Alcoholic Beverage Control Bd.*, 2:11-cv-464-WHA, 2013 WL 5347403, at *26 (M.D. Ala. Sept. 23, 2013) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)). "Recently, the Supreme Court has declared that the ultimate issue is whether the retaliation would not have occurred but for the protected conduct." *Perry*, 2013 WL 5347403, at *26 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013)).  Plaintiff clearly cannot show that but for the EEOC complaint, Plaintiff would not have been disciplined when Plaintiff began receiving discipline for his insubordination prior to the date he filed the complaint.  An employee may not use the filing of an EEOC complaint to stop an employer from disciplining the employee for unacceptable work performance.  *See E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1177 (11th Cir. 2000) (citing *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 762 n.6 (9th Cir.1996)) ("[A]n employer's discrimination does not immunize its employees from consequences of their wrongdoing.").

Plaintiff attempts to show causal connection did exist with the following argument:

> All adverse actions taken against [Plaintiff] commenced after his February 27, 2009, filing of his EEO complaint. The Defendant has not produced a single piece of evidence, despite the Plaintiff's strenuous attempts via discovery to uncover such evidence. These facts provide that indeed the Plaintiff's activity under Title VII were the sole reasons for the actions taken against him.

(Doc. 59) at 3. As explained above, Plaintiff bears the burden at this stage. Thus, the court will not find a causal connection based on any alleged lack of proof on the part of Defendant. Additionally, Defendant has provided evidence of Plaintiff's insubordination predating the EEOC complaint. Therefore, Plaintiff's argument fails.

Casual connection at the *prima facie* level can also be established through a close temporal proximity between the protected expression and the adverse action where there is evidence that the decision maker was aware of the protected conduct. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Here, Plaintiff failed to raise this argument and, therefore, has not satisfied his burden. Further, even had Plaintiff made a temporal proximity argument, he would be unable to show a causal connection because Plaintiff had been receiving progressive discipline *prior* to the filing of the EEOC complaint. Defendant has pointed to instances of insubordination and poor attitude by Plaintiff dating back to December 2008.

The court finds that Plaintiff has not and cannot show that there was a causal connection. Thus, the court finds that Plaintiff has failed to establish a *prima facie* case of circumstantial evidence of retaliation. For this reason, Defendant is entitled to summary judgment.

### 2.     Providing a Legitimate, Nondiscriminatory Reason for Termination

Additionally, even if the court was to assume that Plaintiff could establish a *prima facie* case of retaliation, *which it does not*, Defendant would still be entitled to summary judgment.   Under *McDonnell Douglas*, if Plaintiff establishes a *prima facie* case, the burden then shifts to the employer to provide "legitimate, nondiscriminatory reasons for the challenged employment action."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  Defendant's burden is "exceedingly light," and Defendant must merely proffer a non-discriminatory reason for the adverse employment action, not prove it. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).

Here, Defendant provided multiple legitimate, nondiscriminatory reasons for the challenged employment action.  As detailed above, Plaintiff was disciplined because of Plaintiff's increasingly disruptive and combative behavior following the denial of his request to have his position reclassified, leaving the PAO without permission, abusing sick leave, and other acts of insubordination.[7]

---

[7] Defendant offered the following specific complaints regarding Plaintiff's performance: (1) in December 2008, Plaintiff was insubordinate when he destroyed the PAO government purchase card because he didn't want to be in charge of purchasing; (2) on December 22, 2008, Plaintiff told Ms. Eichorn that he would not complete any work that Plaintiff felt was below his pay grade and that Ms. Eichorn couldn't make him; (3) on January 6, 2009, after Plaintiff left the office without permission multiple times, Ms. Eichorn sent Plaintiff an email reiterating that he must notify Ms. Eichorn if he is leaving the office; (4) on January 22, 2009, Ms. Eichorn found Plaintiff to be extremely negative during a meeting, at which Plaintiff again told Ms. Eichorn to reassign his tasks to other people; (5) the same day, Plaintiff entered a coworker's unattended office without permission; (6) on February 26, 2009, Plaintiff made a personal telephone call at work that lasted over an hour, during which Plaintiff spoke loudly and used foul language; (7) the same day, Plaintiff was explicitly denied his request to leave the office because the office would have been left unattended, but Plaintiff left anyway; (8) on March 10, 2009, Plaintiff received a letter of reprimand for the previous instance of leaving the office after Plaintiff was denied

The court finds that Defendant has met his burden to set forth sufficient legitimate, nondiscriminatory reasons for the employment actions taken against Plaintiff.

### 3.    Proving the Reason to be a Pretext for Unlawful Discrimination

Once Defendant has proffered a nondiscriminatory reason for the actions taken against Plaintiff, Plaintiff "then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001).  In order to prove that a defendant's articulated reason is a pretext, a plaintiff must demonstrate not only that the reason is false, but also that intentional discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (emphasis in original)).  To survive a motion for summary judgment, a plaintiff must rebut every legitimate, nondiscriminatory reason for the employment decision. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).

Plaintiff attempts to argue that many of the events cited by Defendant as reasons for the employment actions are not to be addressed by the court, (Doc. 59) at 11, presumably because the court previously limited Plaintiff's claim to those instances of alleged retaliatory conduct Plaintiff raised and exhausted through the EEOC process. Plaintiff's argument to this effect is nonsensical.  Defendant is entitled to present its

---

permission; (9) on March 13, 2009, during an interim review of Plaintiff's performance, Ms. Eichorn found Plaintiff to be abrupt and rude when she told Plaintiff that his performance was substandard and had seriously degraded since the end of November 2008; and (10) on March 18, 2009, Ms. Eichorn again documented Plaintiff leaving the PAO without permission twice.

reasons for disciplining Plaintiff, regardless of whether Plaintiff challenged those reasons in the underlying administrative proceeding.

Plaintiff first appears to argue pretext by stating that the events on December 12, 2008, December 14, 2008, and January 6, 2009, "never amounted" to discipline and were "*apparently* added to cover up pretext to retaliation."  (Doc. 59) at 6 (emphasis added). Next, Plaintiff attempts to show pretext by denying poor performance, arguing that Ms. Eichorn's assessments of his work were "totally opposite" of how Plaintiff was performing.  (Doc. 59-2) at 7.  Plaintiff also asserts, "The 30 April 2009 investigation order [] [wa]s a mere prop to cover up the agency pretext to retaliatory actions."  (Doc. 59) at 10.

The court finds each of these assertions to be without merit.  Plaintiff does not provide any evidentiary support for these speculative allegations and does not point to any contradictory evidence in the record to prove these events occurred in any manner other than as presented previously.  To avoid summary judgment, Plaintiff must do more than show doubt as to the material facts.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Plaintiff must support his assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

Next, Plaintiff argues that Ms. Eichorn, Mr. Steuber, and COL Kelley all failed to "produce[] a single piece of evidence that any [] documents were discussed with the Plaintiff, nor is there any evidence that the Plaintiff was counselled, e-mailed or spoke to

the Plaintiff about any concerns of insubordination, leave abuse, or any other serious discrepancy prior to or after the Plaintiff's 27 February 2009 filing of his EEO complaint." (Doc. 59) at 6. As stated above, the burden here remains with Plaintiff, and it is not on Defendant to provide proof that his reasons were not pretext. *Denney*, 247 F.3d at 1183.

Finally, Plaintiff also belies his retaliation argument with his own inconsistencies in this litigation. At one point, Plaintiff claimed that employees, including Ms. Eichorn and Mr. Steuber, began "harassing" him as early as December 19, 2008. (Doc. 53-2) at 7; (Doc. 59-2) at 10). Additionally, a letter from the Union dated May 11, 2009, states that Ms. Eichorn had been harassing Plaintiff "for almost four months." (Doc. 53-21) at 2. If Ms. Eichorn's behavior began four months prior to May 11, then her behavior must predate the February 27 EEOC filing. However, at other points in this litigation, Plaintiff has stated, "I was never mistreated until I filed," (Doc. 59-2) at 7, and "From the time I filed an EEO complaint against Ms. Eichorn, I had been harassed in various ways, beginning with performance counselings." (Doc. 53-2) at 4. What Plaintiff refers to as "harassment," the court finds to be discipline, and Plaintiff's concessions that this began prior to the filing of his complaint supports a lack of pretext in this case.

Plaintiff has failed to rebuff with any evidence the legitimate reasons as set forth by Defendant for the actions taken against Plaintiff. Because Plaintiff has not met his burden, even were this court to assume a *prima facie* case of retaliation, Defendant is entitled to summary judgment.

## V.      CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's Motion (Doc. 53) be GRANTED as to the request for summary judgment and DENIED as to the request for dismissal.

It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation on or before April 15, 2014.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 1st day of April, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE